Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2014, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD WALKER**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHARLES SWIFT,                    )
                                  )
    Appellant-Defendant,          )
                                  )
       vs.                        )    No. 48A04-1309-CR-471
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1210-FB-1920

**June 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Charles Swift appeals his sentence for one count of Class B felony robbery and one count Class C felony robbery. We affirm.

**Issue**

Swift raises one issue, which we restate as whether his twenty-five-year sentence is inappropriate.

**Facts**

On October 10, 2012, eighty-five-year-old Marshall Needler was with his wife and friends at the Hoosier Park casino in Madison County. Around 5:40 p.m. Needler went to the restroom of the casino. While standing in the restroom, Needler's neck was grabbed from behind by a man later identified as Swift, who then pushed Neeler's head down as far as it would go. Swift grabbed Needler's arm, told him not to look at his face, then spun Needler into a stall across from the urinal. Swift removed Needler's wallet from his front pocket, pushed Needler to the floor, informed him not to come out of the restroom for five minutes, and walked out of the restroom. Needler then reported the robbery to Hoosier Park Security, who turned over the investigation to the Indiana Gaming Commission. The Indiana Gaming Commission reviewed the surveillance recordings of the restroom and saw Needler enter the restroom and then saw Swift enter shortly after. They then saw Swift exit the restroom followed by Needler moments later.

On October 11, 2012, at approximately 8:15 p.m., eighty-five-year-old Reed Cheesman entered the restroom of the Hoosier Park casino, followed by Swift. Swift pressed Cheesman into the urinal causing Cheesman to tear his left arm open on the screws

holding up paneling between the urinals. Swift held him there, searched his pockets, removed Cheesman's silver money clip that contained approximately sixty dollars from his front right pocket, and exited the restroom. Cheesman pursued Swift but was only able to observe that he was wearing blue jeans and a light-colored top. Cheesman informed security about what happened and received aid for his injuries to his arm. The Indiana Gaming Commission apprehended Swift as he was leaving the casino and recovered Cheesman's money clip after conducting a search.

The state charged Swift with Class B felony robbery and Class C felony robbery. A jury found him guilty as charged. At sentencing, Swift attributed his troubles to his substance abuse problems and apologized. The trial court concluded that Swift prioritized drugs over everything, had unsuccessfully completed previous substance abuse opportunities, and deflected responsibility for his acts. The trial court sentenced Swift to seven years imprisonment for Class C felony robbery, and eighteen years imprisonment for Class B felony robbery, to be served consecutively. The trial court also ordered twenty years of the sentence executed and five years of the sentence suspended to supervised probation. Swift now appeals.

## Analysis

We assess whether Swift's twenty-five-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offenses. See Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App.

3

2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and the myriad of other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offenses is that Swift made a decision to rob two eighty-five-year-old men who were vulnerable in public restrooms. Both men were manhandled as Swift forcibly removed Needler's wallet and Cheesmans's money clip, making his actions crimes of violence. Needler was pushed to the floor, and Cheesman cut his arm when he was shoved forward onto screws from the paneling between the urinals. The fact that Swift laid in wait for elderly and vulnerable victims near restrooms over a two-day period adds to the

4

heinousness of the offenses. The nature of the offenses does not warrant a reduction of his sentence.

As for his character, Swift's criminal history reveals that he had three contacts with the juvenile justice system, one resulting in a finding of delinquency for committing an act that would have been a Class B felony burglary if committed as an adult. As an adult Swift has multiple misdemeanor convictions including battery resulting in bodily injury, operating a vehicle while intoxicated, and operating a vehicle while intoxicated endangering a person. He has continually shown poor character as he also accumulated felony convictions for operating a vehicle as a habitual traffic offender. Swift has been granted probation and ordered to undergo substance abuse treatment previously, but he has never completed the program and remains addicted to drugs. In light of the frequency of the offenses, the age of the victims, and Swifts poor character, we find that his sentence is appropriate even though we are mindful of Swift's apology and admitted drug problem.

## Conclusion

The twenty-five-year sentence is appropriate in light of the nature of the offenses and the character of the offender. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.